PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAMES H. FRENCH, assignee of the
claims of Jeffco Development
Corporation; KATHLEEN B. FRENCH,
assignee of the claims of Jeffco
Development Corporation,
              *Plaintiffs-Appellants,*

v.

ASSURANCE COMPANY OF AMERICA;
UNITED STATES FIRE INSURANCE
COMPANY,
              *Defendants-Appellees,*

and

THE AETNA CASUALTY AND SURETY
COMPANY, now known as Travelers
Casualty and Surety Company,
              *Defendant.*

No. 05-1356

———————————————————

NATIONAL ASSOCIATION OF HOME
BUILDERS,
       *Amicus Supporting Appellants.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-04-550-1-JCC)

Argued: March 14, 2006

Decided: April 27, 2006

Before WILKINSON and MICHAEL, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded by published opinion. Senior Judge Hamilton wrote the opinion, in which Judge Wilkinson and Judge Michael joined.

---

## COUNSEL

**ARGUED:** David Hilton Wise, WATERS & WISE, P.L.L.C., Fairfax, Virginia, for Appellants. Thomas Sykes Schaufelberger, WRIGHT, ROBINSON, OSTHIMER & TATUM, Washington, D.C., for Appellees. **ON BRIEF:** Paul V. Waters, WATERS & WISE, P.L.L.C., Fairfax, Virginia, for Appellants. Edward E. Nicholas, WRIGHT, ROBINSON, OSTHIMER & TATUM, Washington, D.C., for Appellee United States Fire Insurance Company; Robert Edward Worst, KALBAUGH, PFUND & MESSERSMITH, Fairfax, Virginia, for Appellee Assurance Company of America. David S. Jaffe, NATIONAL ASSOCIATION OF HOME BUILDERS, Washington, D.C., for Amicus Supporting Appellants.

---

## OPINION

HAMILTON, Senior Circuit Judge:

This appeal presents two separate, but related, insurance coverage questions in the construction context: (1) Whether, under Maryland law, a standard 1986 commercial general liability policy form published by the Insurance Services Office, Incorporated (ISO) provides liability coverage to a general contractor to correct defective workmanship performed by a subcontractor; and (2) Whether, under Maryland law, the same policy form provides liability coverage for the costs to remedy unexpected and unintended property damage to the contractor's otherwise nondefective work-product caused by the subcontractor's defective workmanship. We answer the first question in the negative and the second question in the affirmative. Accordingly, we affirm in part and vacate in part the judgment below in favor of the insurance company defendants and remand for further proceedings.

I.

The following relevant facts are undisputed. In 1993, James and Kathleen French (the Frenches) contracted with Jeffco Development Corporation (Jeffco) for the construction of a single-family home in Fairfax County, Virginia. Pursuant to the construction contract, and via a subcontractor, the exterior of the home was clad with a synthetic stucco system known as Exterior Insulating Finishing System (EIFS). Following the completion of construction, building officials issued a Certificate of Occupancy for the Frenches' home in December 1994. Nearly five years later, in late 1999, the Frenches discovered extensive moisture and water damage to the otherwise nondefective structure and walls of their home resulting from the defective cladding of the exterior of their home with EIFS. The Frenches have since spent in excess of $500,000 to correct the defects in the EIFS exterior of their home and to remedy the resulting damage to the otherwise nondefective structure and walls of their home.

On November 29, 1999, the Frenches filed suit (the Underlying Suit) against Jeffco in Virginia state court alleging multiple claims, including breach of contract, and seeking damages to cover the costs to correct the construction defects with respect to the EIFS exterior of their home and to remedy the resulting damage to the otherwise nondefective structure and walls of their home.

For certain time periods (some overlapping) during the entire time period relevant to the Underlying Suit, Jeffco had commercial general liability coverage through four different commercial general liability insurance carriers: Assurance Company of America (Assurance), United States Fire Insurance Company (U.S. Fire), Ohio Casualty Insurance Company (Ohio Casualty), and Aetna Casualty and Surety Company n/k/a Travelers Casualty and Surety Company (Travelers). All parties agree that for purposes of resolving the issues presented in the present appeal, the commercial general liability policies issued to Jeffco by appellees Assurance and U.S. Fire consisted of the 1986 version of the standard commercial general liability policy form drafted by the ISO[1] and widely used in the insurance industry. *See*

---

[1]The ISO is "a national insurance policy drafting organization." *State Auto Prop. and Cas. Ins. Co. v. Travelers Indem. Co. of Am.*, 343 F.3d 249, 255 n.9 (4th Cir. 2003).

*Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 772 (1993) ("ISO develops standard policy forms and files or lodges them with each State's insurance regulators; most CGL insurance written in the United States is written on these forms."). From henceforth, we will refer to these policies as the 1986 ISO CGL Policies. Of relevance in the present appeal, the 1986 ISO CGL Policies provided:

> **SECTION I — COVERAGES**
>
> **COVERAGE A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.  Insuring Agreement**
>
>> a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
>>
>> \*     \*     \*
>>
>> b.   This insurance applies to . . . "property damage" only if:
>>
>>> (1)   The . . . "property damage" is caused by an "occurrence" . . . .

(J.A. 157). The 1986 ISO CGL Policies applied to completed operations, as defined in said policies under "Products-completed operations hazard." (J.A. 168). This term is defined, in relevant part, as follows:

14. "Products-completed operations hazard":

    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1) Products that are still in your physical possession; or

        (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            (a) When all of the work called for in your contract has been completed.

            (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

*Id.*

The 1986 ISO CGL Policies contained several exclusions that limit the insurance carriers' duty to provide coverage to Jeffco. The following two of those exclusions are relevant to the issues on appeal:

    **2. Exclusions**

This insurance does not apply to:

a.   **Expected or Intended Injury**

". . . [P]roperty damage" expected or intended from the standpoint of the insured.

\*       \*       \*

(J.A. 157).

l.   **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

(J.A. 160).

The 1986 ISO CGL Policies define the term "[o]ccurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (J.A. 168). While the 1986 ISO CGL Policies do not define the term "accident," controlling Maryland case law provides that an act of negligence constitutes an "accident" under a liability insurance policy when the resulting damage takes place without the insured's actual foresight or expectation. *Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540, 548 (Md. 1996) (adopting subjective test from standpoint of the insured regarding whether act of negligence constitutes an "accident" under liability insurance policy); *see also Cole v. State Farm Mut. Ins. Co.*, 753 A.2d 533, 541 (Md. 2000). The test is a subjective one, because, according to Maryland's highest court, "[i]f we were to adopt an objective standard and hold that the term 'accident' as used in liability insurance policies excludes coverage for damage that should have been foreseen or expected by

the insured, such insurance policies would be rendered all but meaningless." *Sheets*, 679 A.2d at 549. Also of relevance here, the 1986 ISO CGL Policies define "[p]roperty damage" as "Physical injury to tangible property, including all resulting loss of use of that property." (J.A. 169).

Jeffco notified Assurance, U.S. Fire, Ohio Casualty, and Travelers of the Underlying Suit and requested to be defended. Assurance and U.S. Fire undertook to defend Jeffco pursuant to a reservation of rights letter. Ohio Casualty also undertook to defend Jeffco, but Travelers refused to provide any defense. Assurance, U.S. Fire, and Ohio Casualty jointly retained the law firm of Sinnott, Nuckols, and Logan to represent Jeffco in the Underlying Suit.

On July 28, 2003, the date of trial in the Underlying Suit, the only count remaining alleged breach of contract. However, that same day, Jeffco and the Frenches reached a settlement agreement (the Settlement Agreement). Although Ohio Casualty consented to the Settlement Agreement, Assurance and U.S. Fire did not.

Pursuant to the Settlement Agreement: (1) Jeffco agreed to confess judgment to the Frenches for $450,000; (2) Jeffco and Ohio Casualty would only be responsible to collectively pay the Frenches $45,000 of the $450,000 confessed judgment; (3) the judgment would be marked "paid and satisfied" upon the Frenches' receipt of the $45,000, (J.A. 111); and (4) Jeffco would assign the Frenches all rights, claims, and interest it has or may have against Assurance and U.S. Fire in connection with the allegations in the Underlying Suit. Jeffco and Ohio Casualty fulfilled their obligations under the Settlement Agreement and, by order entered September 2, 2003, the state court marked the $450,000 judgment "fully paid and satisfied in accordance with the settlement agreement." (J.A. 122).

On April 1, 2004, the Frenches, as assignees of Jeffco's rights, claims, and interest against Assurance and U.S. Fire in connection with commercial general liability coverage for the allegations in the Underlying Suit, filed the present civil action in Virginia state court against Assurance and U.S. Fire (from henceforth, collectively, Insurance Defendants). The complaint alleged counts for declaratory judgment; breach of contractual duty to indemnify; breach of contractual

duty to defend; breach of the implied covenant of good faith and fair dealing; and unjust enrichment. Insurance Defendants permissibly removed the case to federal court based upon diversity jurisdiction. All parties agreed below and continue to agree on appeal that Maryland substantive law controls the coverage disputes presented in the present action.

On January 21, 2005, the Frenches filed a motion for partial summary judgment, and the Insurance Defendants filed a motion for summary judgment. The Frenches subsequently voluntarily dismissed their counts alleging breach of express duty to defend and unjust enrichment. This left the counts for declaratory judgment, breach of contractual duty to indemnify, and breach of the implied covenant of good faith and fair dealing. "The Frenches sought summary judgment on the basis that there was no genuine issue of material fact that the property damage to their home was caused by an occurrence during [the Insurance Defendants' respective] policy periods and that they were entitled to judgment as a matter of law for $450,000 in direct damages." (Frenches' Opening Br. at 4).

The district court granted summary judgment in favor of the Insurance Defendants and denied the Frenches' motion for partial summary judgment. Relying on the Maryland Court of Special Appeals' decision in *Lerner Corp. v. Assurance Co. of Am.*, 707 A.2d 906 (Md. Ct. Spec. App. 1998), the district court concluded that no coverage existed under the 1986 ISO CGL Policies pursuant to the express exclusion of coverage for property damage expected or intended from the standpoint of the insured.

II.

On appeal, the Frenches seek reversal of the district court's grant of summary judgment in favor of the Insurance Defendants with respect to their claims for declaratory judgment and breach of contract with respect to the express duty to indemnify.[2] The Frenches base

---

[2]Federal Rule of Appellate Procedure 28(a)(9)(A) requires that the argument section of an appellant's opening brief contain the "appellant's contentions and the reasons for them, with citations to the authorities and

both claims upon their assertion that the 1986 ISO CGL Policies provide Jeffco liability coverage for the cost to correct their home's defective EIFS exterior and to remedy the resulting moisture damage to the home's otherwise nondefective structure and walls. The Insurance Defendants urge affirmance based upon the reasoning of the district court. Alternatively, the Insurance Defendants suggest affirmance on three separate and independent grounds they asserted below, but which the district court did not address.[3] *See infra* at 20-21.

We review *de novo* the district court's grant of summary judgment. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Edell & Assocs. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 436 (4th Cir. 2001). Thus, the overarching issue that we must decide *de novo* is whether there is no genuine issue of material fact and the Insurance Defendants are entitled to judgment as a matter of law. To answer this question, we apply, as the parties agree, Maryland's substantive law regarding the interpretation of an insurance policy, which law provides in general as follows:

> [a]n insurance policy is interpreted in the same manner as
> any other contract. Maryland courts do not follow the rule

---

parts of the record on which the appellant relies . . . ." *Id.* "Failure to comply with the specific dictates of this rule with respect to a particular claim triggers abandonment of that claim on appeal." *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999).

Here, the Frenches did not comply with the specific dictates of Federal Rule of Appellate Procedure 28(a)(9)(A) with respect to their claim alleging breach of the implied covenant of good faith and fair dealing, and therefore, such claim is abandoned on appeal. While the Frenches mention their claim alleging breach of the implied covenant of good faith and fair dealing in the procedural history portion of their opening brief, they never refer to it again in their opening brief.

[3]These alternative arguments appear at pages 24 through 30 of the Insurance Defendants' appellate brief filed in response to the Frenches' opening appellate brief.

that an insurance policy must be strictly construed against the insurer. The principal rule in the interpretation of contracts is to effect the intentions of the parties. When a contract's wording is clear, the court will presume that the parties intended what they expressed, even if the expression differs from the parties' intentions at the time they created the contract. If reasonably possible, effect must be given to every clause and phrase of a contract, so as not to omit an important part of the agreement.

*Nationwide Ins. Co. v. Rhodes*, 732 A.2d 388, 390-91 (Md. Ct. Spec. App. 1999) (internal quotation marks and citations omitted).

A.

We will first address the reasoning of the district court. The district court relied heavily upon the Maryland Court of Special Appeals' opinion in *Lerner Corp. v. Assurance Co. of Am.*, 707 A.2d 906 (Md. Ct. Spec. App. 1998), in ruling in favor of the Insurance Defendants. The Insurance Defendants also argue that *Lerner* is dispositive in their favor. Accordingly, a thorough discussion of *Lerner* is in order. However, before we undertake such a discussion, we deem it helpful to provide some background information regarding relevant provisions of the 1986 ISO CGL Policies.

Prior to 1986, the ISO had not significantly revised its standard commercial general liability form since 1973. Ernest Martin, Jr., Daniel T. Mabery, Erika L. Blomquist & Jeffrey S. Lowenstein, *Insurance Coverage for the New Breed of Internet-Related Trademark Infringement Claims*, 54 SMU L. Rev. 1973, 1987-88 (2001) ("ISO frequently makes minor revisions to its CGL form, but rarely undertakes a major, substantive overhaul. . . . The standard ISO form in existence before the 1986 revision was promulgated in 1973 . . . .").

"'In the 1973 version of the [ISO's CGL policy form], the work performed exclusion precluded coverage for "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."'"[4] *Kvaerner Metals Division*

---

[4]In the 1973 version, this was exclusion (o). F. Malcolm Cunningham, Jr. & Amy L. Fischer, *Insurance Coverage in Construction-The Unanswered Question*, 33 Tort & Ins. L. J. 1063, 1092 n.152 (1998).

*of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 825 A.2d 641, 656 (Pa. Super. Ct. 2003) (some internal quotation marks omitted) (internal citations omitted) (quoting *Collett v. Ins. Co. of the West*, 64 Cal. App. 4th 338, 341 (Cal. Ct. App. 1998)); *see also* 21 Eric Mills Holmes, *Holmes' Appleman on Insurance 2d*, § 132.9 at 152 (Matthew Bender, Inc. 2002). The "on behalf of" language was interpreted to mean that no coverage existed for damage to a subcontractor's work, or for damage to the insured's own work for damage resulting from a subcontractor's work. *Kvaerner Metals*, 825 A.2d at 656; *Maryland Casualty Co. v. Reeder*, 221 Cal. App. 3d 961, 972 (Cal. Ct. App. 1990); Steven Plitt, Daniel Maldonado & Joshua D. Rogers, *Couch on Insurance 3d* § 129:18 (1995); *Holmes' Appleman on Insurance 2d*, § 132.9 at 153.

"Many contractors were unhappy with this state of affairs, since more and more projects were being completed with the help of subcontractors." *American Family Mut. Ins. Co. v. American Girl, Inc.*, 673 N.W.2d 65, 82-83 (Wis. 2004). *See also Couch on Insurance 3d* § 129:18 ("Due to the increasing use of subcontractors on construction projects, many general contractors were not satisfied with the lack of coverage provided under [the 1973 ISO CGL] commercial general liability policies where the general contractor was not directly responsible for the defective work."). In response to this unhappiness, beginning in 1976, an insured under the 1973 ISO CGL policy form could pay a higher premium to obtain a broad form property damage endorsement (the BFPD Endorsement) which effectively eliminated the "on behalf of" language and excluded coverage only for property damage to work performed by the named insured. *Kvaerner Metals*, 825 A.2d at 656; *Reeder*, 221 Cal. App. 3d at 972; *Couch on Insurance 3d* § 129:18; *Holmes' Appleman on Insurance 2d*, § 132.9 at 153. Thus, liability coverage was extended to the insured's completed work when the damage arose out of work performed by a subcontractor. *Kvaerner Metals*, 825 A.2d at 656; *Reeder*, 221 Cal. App. 3d at 972; *Couch on Insurance 3d* § 129:18; *Holmes' Appleman on Insurance 2d*, § 132.9 at 153.

In 1986, as part of a major revision, the subcontractor exception aspect of the BFPD Endorsement was added directly to the body of the ISO's CGL policy in the form of an express exception to the "Your Work" exclusion. *Limbach Co. LLC v. Zurich Am. Ins. Co.*,

396 F.3d 358 (4th Cir. 2005); *American Family Mut. Ins. Co.*, 673 N.W.2d at 83. Thus, under the 1986 ISO CGL Policies, the "Your Work" exclusion, *i.e.*, exclusion (l), specifically states that it "does not apply if the damaged work *or the work out of which the damage arises was performed on [the insured contractor's] behalf by a subcontractor*." (J.A. 160) (emphasis added).

One other distinction between the 1973 ISO CGL policy and the 1986 ISO CGL Policies is the definition of "[o]ccurrence." Rather than containing a separate exclusion from coverage for property damages "expected or intended from the standpoint of the Insured," as does the 1986 version of the ISO CGL policy, *i.e.*, exclusion (a), the 1973 version includes the same language within its definition of occurrence. "'Occurrence' is defined by the 1973 [ISO CGL] policy as 'an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected or intended from the standpoint of the Insured.'" *Lerner*, 707 A.2d at 909.

With this background in mind, we now turn to a thorough discussion of *Lerner*. In *Lerner*, the Maryland Court of Special Appeals addressed the issue, in the construction context, of what damages are "expected" from the standpoint of the insured under the terms of a 1973 ISO CGL policy and a 1986 ISO CGL policy. In *Lerner*, the plaintiffs were a developer and the firm that provided the developer with construction management services in regard to the construction of an office building in Rockville, Maryland. *Id.* at 907. A third party acted as the general contractor and all construction work on the building was performed by subcontractors. *Id.*

The plaintiffs sold the building to the United States. *Id.* at 907-08. The contract of sale provided that acceptance of the work performed under the contract was deemed to be final except as to latent defects. *Id.* Following the actual sale of the building, the General Services Administration (GSA) discovered latent defects in the building's marble and stone exterior facade. *Id.* at 908. There was no damage to other parts of the building resulting from such defects.

The plaintiffs undertook to repair the defective facade and then sued their commercial general liability insurers for indemnity. *Id.* at

908. The defendant general liability carriers defended on the ground that the policies did not provide coverage for the plaintiffs' economic losses arising out of breach of contract and, in addition, that any alleged damages were specifically excluded under the provisions of the policy. *Id.* at 907.

The trial court granted summary judgment in favor of the defendant insurance carriers on the ground that the damages alleged by the plaintiffs arose out of a breach of contract and therefore, were not covered. *Id.* The plaintiffs appealed. *Id.*

On appeal, Maryland's Court of Special Appeals affirmed, holding that the plaintiffs' liability to correct the building's defective facade did not result from "the happening of an 'accident'" but resulted "simply from its failure to satisfy its obligation under their contract," and therefore, did not constitute an "occurrence" under any of the CGL policies at issue. *Id.* at 911. The court reasoned that "[i]f the damages suffered relate to the satisfaction of the contractual bargain, it follows that they are not unforeseen. In other words, and in the context of this case, it should not be unexpected and unforeseen that, if the Building delivered does not meet the contract requirements of the sale, the purchaser will be entitled to correction of the defect." *Id.* at 912. The *Lerner* court went on to opine in *dicta*, however, that "if the defect causes unrelated and unexpected . . . property damage to something other than the defective object itself, the resulting damages, subject to the terms of the applicable policy, may be covered. For example, if a collapse of the veneer had injured a user of the facility or damaged property other than the veneer itself, these may well be covered." *Id.*

In the case before us, the district court held that coverage to correct the defective EIFS exterior of the Frenches' home and to remedy the resulting damage to the nondefective structure and walls of such home was excluded pursuant to the express exclusion in the 1986 ISO CGL Policies for property damage that was expected from the standpoint of the insured.[5] Relying on *Lerner Corp. v. Assurance Co. of Am.*, 707 A.2d 906 (Md. Ct. Spec. App. 1998), the district court held that "the property damage to the residence was 'expected' from the

---

[5]There is no contention that the property damage at issue was intended by anyone.

standpoint of Jeffco," and therefore, no coverage existed for the Frenches' breach of contract claim. (J.A. 211).

In our view, the district court is partly right and partly wrong. Under the 1986 ISO CGL Policies, the Insurance Defendants agreed to defend and, if necessary, indemnify Jeffco for "property damage" caused by an "occurrence," unless such "property damage" was otherwise excluded by the terms of the policies. An "[o]ccurrence" is defined by the 1986 ISO CGL Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (J.A. 168). "Property damage" is defined as "Physical injury to tangible property, including all resulting loss of use of that property." (J.A. 169). Thus, our initial inquiry is whether the property damage to the Frenches' home falls within the initial grant of coverage in the 1986 ISO CGL Policies.

For analytical purposes, we deem it necessary to divide the property damage to the Frenches' home into two categories. The first category is the defective EIFS exterior. The second category is the damage to the nondefective structure and walls of the Frenches' home directly resulting from moisture intrusion through the defective EIFS exterior.

With respect to the first category, *Lerner* unequivocally answers the question. We hold that just as the defective application of the building's stone facade in *Lerner* did not constitute an "accident," and, therefore, not an "occurrence" under the materially similar CGL policies at issue in *Lerner*, so does the defective application of the EIFS exterior to the Frenches' home not constitute an "accident," and therefore, not an "occurrence" under the 1986 ISO CGL Policies.[6] *Lerner*, 707 A.2d at 912-13. As the *Lerner* court reasoned: "[T]he obligation to repair the facade itself is not unexpected or unforeseen under the terms of the sales contract. Therefore, the repair or replace-

---

[6]Similarly, as the district court held in the case before us, Jeffco's contractual obligation to provide the Frenches with a defect-free EIFS exterior was known to Jeffco at the time that it entered into the contract to construct the Frenches' home, and therefore, the exclusion for "'property damage' expected or intended from the standpoint of the insured," (J.A. 157), operates to defeat coverage.

ment damages represent economic loss and consequently would not trigger a duty to indemnify under a CGL policy." *Id.* at 911-12.

However, despite the position of the district court and the Insurance Defendants, *Lerner* does not answer the question with respect to the second category of damage claimed by the Frenches—*i.e.*, damage to the nondefective structure and walls of the Frenches' home caused by moisture intrusion through the defectively installed EIFS exterior. Unlike the undisputed factual situation in the case before us, factually, *Lerner* did not involve property damage to otherwise nondefective parts of the building. This is a significant distinction, and one which brings into play the subcontractor exception to the "Your Work" exclusion in the 1986 ISO CGL Policies.

Thus, the question only referenced by *Lerner* in *dicta*, and not answered by any other controlling Maryland authority, is whether, under Maryland law, the 1986 ISO CGL Policies provide a general contractor liability coverage for the cost to remedy property damage to the contractor's otherwise nondefective work-product caused by a subcontractor's defective workmanship? The Supreme Court of Wisconsin's thoughtful opinion in *American Family Mutual Insurance Company v. American Girl, Inc.*, 673 N.W.2d 65 (Wis. 2004) and *dicta* in *Lerner* conclusively persuade us that the answer to this question is yes.

In *American Family*, the Supreme Court of Wisconsin considered a materially analogous set of facts. The court found coverage under the 1986 version of the ISO CGL policy to indemnify a general contractor for the costs to remedy property damage to a warehouse (*i.e.*, the sinking of the building's foundation and buckling and cracking of the building's structure necessitating the building being declared unsafe and torn down) caused by faulty site-preparation advice by a soil engineering subcontractor. *Id.* 69-71. With respect to the initial grant of coverage, the court held that the property damage to the warehouse was the result of an accident, *i.e.*, the settling of the soil, and therefore, an "occurrence" within the meaning of the 1986 ISO CGL policy form. *Id.* at 78.

Moreover, in *American Family*, the liability carrier, like the Insurance Defendants here, asserted, *inter alia*, that the "expected or

intended" exclusion, *i.e.*, exclusion (a), applied to defeat coverage in full. *Id.* at 79. Specifically, the liability carrier argued that given poor soil conditions at the site and the insured general contractor's recognition that special measures were required to prepare the soil to carry the weight of the warehouse, the insured general contractor expected that some settlement would occur, and thus, the exclusion applied. *Id.* The court held the exclusion was not triggered because the liability carrier was not arguing that property damage was expected or intended by the general contractor, but only that some degree of settlement must have been expected under the circumstances. *Id.*

Additionally, the insurance carrier in *American Family* also argued that coverage to remedy the property damage caused by the faulty site-preparation advice by one of the insured general contractor's subcontractors was defeated by the "Your Work" exclusion, *i.e.*, exclusion (l). After recounting the history of the ISO's inclusion of the subcontractor exception to the "Your Work" exclusion in the 1986 ISO CGL policy form, the Supreme Court of Wisconsin reiterated that the 1986 revision restored otherwise excluded coverage for damage caused to construction projects by subcontractor negligence. *Id.* at 83. The court also admonished against applying case law involving the 1973 ISO CGL policy form to cases involving the 1986 ISO CGL policy form. *Id.*

With respect to the costs to remedy the property damage to the structure and walls of the Frenches' home, the case before us appears to be on all fours with *American Family*. Here, there is no evidence that Jeffco subjectively expected or intended that the nondefective structure and walls of the Frenches' home would suffer damage from moisture intrusion. Indeed, there does not appear even to be an allegation that Jeffco either expected or intended that its subcontractor (Coronado Stucco & Stone) would defectively install the EIFS exterior on the Frenches' home. Accordingly, as was the case of the sinking soil in *American Family*, the moisture intrusion into the nondefective structure and walls of the Frenches' home was an accident, and therefore, an "occurrence" under the initial grant of coverage of the 1986 ISO CGL Policies, which coverage is not defeated by the express exclusion for coverage of damage which is expected or intended from the standpoint of the insured.

Critically, we emphasize that the record contains no evidence, and there appears to be no allegation, that upon completion of the Frenches' home, and the issuance of the Certificate of Occupancy for the home in December 1994, any defect existed with respect to the structure and walls of the Frenches' home. The nondefective structure and walls were damaged over a period of nearly five years when the defective EIFS exterior allowed harmful moisture and water penetration. Thus, to the extent the Frenches, standing in the shoes of Jeffco, seek coverage for the costs to remedy the property damage to the otherwise nondefective structure and walls of their home, our holding in favor of such coverage does not act as a source of warranty for contractually provided workmanship. As delivered per the construction contract, the structure and walls of the Frenches' home were defect-free.

At oral argument, counsel for Insurance Defendants candidly and correctly acknowledged that had a portion of the defective EIFS exterior on the Frenches' home fallen outwardly onto an automobile or inwardly onto a painting hanging on an interior wall or on furniture in the home, the 1986 ISO CGL Policies would have provided Jeffco liability coverage for damages to the automobile, the painting, and the furniture. In this same vein, it is illogical to contend that had the defective EIFS exterior on the Frenches' home failed and caused damage to the flooring inside the home or to the structural members of the house, neither of which was defective at completion of construction and certification for occupancy, coverage would not have been provided under the 1986 ISO CGL Policies. This aspect of coverage is inherently different from coverage to correct the defective EIFS exterior on the Frenches' home. As we have already held, coverage to correct the defective EIFS exterior is not provided under the 1986 ISO CGL Policies, as opposed to damage to other nondefective parts of the home, *i.e.*, the interior and structural members of the home, which were not damaged or defective upon completion of construction, certification for occupancy and delivery of the home, but may have sustained damage as the result of the failure of the EIFS exterior.

Maryland's Court of Special Appeals makes the same point in *dicta* in *Lerner*. There, the court distinguished between the cost to correct a defect in work performed under a construction contract, for which

no coverage under the 1986 ISO CGL policy form exists, and "property damage to something other than the defective object itself . . . ." *Lerner*, 707 A.2d at 912. "For example, if a collapse of the veneer had injured a user of the facility or damaged property other than the veneer itself, these may well be covered." *Id.* That is exactly the situation here. The defective EIFS exterior on the Frenches' home allowed moisture intrusion into the structure and walls of the Frenches' home, which constitutes damage to property other than to the defective EIFS exterior itself. This *dicta* in *Lerner* strongly suggests that, if faced with the facts before us in the present appeal, Maryland's highest court would find in favor of coverage for the costs to remedy the property damage to the otherwise nondefective structure and walls of the Frenches' home.

Finally and significantly, our holding today that, under Maryland law, coverage exists under the 1986 ISO CGL Policies for the costs to remedy the damage to the nondefective structure and walls of the Frenches' home, unlike that of the district court and the position of the Insurance Defendants, gives effect to the subcontractor exception to the "Your Work" exclusion in these policies. As Maryland's highest court has continually reiterated: "It is a recognized rule of construction that a contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause or phrase so that a court does not cast out or disregard a meaningful part of the writing." *Bausch & Lomb, Inc. v. Utica Mutual Ins. Co.*, 625 A.2d 1021, 1033 (Md. 1993). The very existence of the "Your Work" exclusion and the history of subcontractor exception to that exclusion provide us solid confirmation that our holding with respect to the nondefective structure and walls of the Frenches' home is correct. As the Court of Appeals of Kansas expressly quoted with approval:

> "If the policy's exclusion for damage to the insured's work contains a proviso stating that the exclusion is inapplicable if the work was performed on the insured's behalf by a subcontractor, it would not be justifiable to deny coverage to the insured, based upon the absence of an occurrence, for damages owed because of property damage to the insured's work caused by the subcontractor's work. Reading the policy as a whole, it is clear that the intent of the policy was to cover the risk to the insured created by the insured's use

of a subcontractor. Moreover, if coverage were never available for damage to the insured's work because of a subcontractor's mistake, on the theory that there was no occurrence even under those circumstances, the foregoing subcontractor proviso to the exclusion for damage to the insured's work would be meaningless, and if possible, policies should not be interpreted to render policy provisions meaningless."

*Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 104 P.3d 997, 1003 (Kan. Ct. App. 2005) (quoting Windt, *Insurance Claims and Disputes* § 11.3, Supp. p. 48 (4th ed. 2001)).

The 1986 ISO CGL Policies, like the ISO liability policies before them, are structured such that express exclusions, like the "Your Work" exclusion, limit an initial grant of coverage. Then exceptions to exclusions, such as the subcontractor exception to the "Your Work" exclusion, restore otherwise excluded coverage. *See, e.g., Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 104 P.3d 997, 1003 (Kan. Ct. App. 2005) (concluding that damage caused to structure of home as a result of continuous exposure to moisture due to subcontractor's defective materials and work was an occurrence triggering indemnity provisions of ISO CGL policy containing subcontractor exception to "Your Work" exclusion); *American Family*, 673 N.W.2d at 83-84 ("There is coverage [to remedy damage to warehouse resulting from subcontractor's faulty site-preparation advice] under the insuring agreement's initial coverage grant. Coverage would be excluded by the business risk exclusionary language, except that the subcontractor exception to the business risk exclusion applies, which operates to restore the otherwise excluded coverage."); *O'Shaughnessy v. Smuckler Corp.*, 543 N.W.2d 99 (Minn. Ct. App. 1996) (recognizing that 1986 amendments to "Your Work" exclusion changed standard CGL policy so as to provide coverage for property damage to a contractor's work when that damage is caused by a subcontractor's defective work), *abrogated on other grounds by Gordon v. Microsoft Corp.*, 645 N.W.2d 393 (Minn. 2002). In sum, our holding is consistent with the intent and structure of the 1986 ISO CGL Policies and Maryland law.

To be clear, we will reiterate our holdings. We hold that, under Maryland law, a standard 1986 commercial general liability policy

form published by the ISO does not provide liability coverage to a general contractor to correct defective workmanship performed by a subcontractor. We also hold that, under Maryland law, the same policy form provides liability coverage for the cost to remedy unexpected and unintended property damage to the contractor's otherwise nondefective work-product caused by the subcontractor's defective workmanship. With respect to this last holding, we assume *arguendo* that no other policy exclusion applies.

Based upon these holdings, we: (1) affirm the district court's grant of summary judgment in favor of the Insurance Defendants with respect to the Frenches' claims for declaratory judgment and breach of the express duty to indemnify to the extent those claims seek coverage under the 1986 ISO CGL Policies to correct the defective EIFS exterior on the Frenches' home; (2) vacate the district court's grant of summary judgment in favor of the Insurance Defendants with respect to the Frenches' claims for declaratory judgment and breach of the express duty to indemnify to the extent those claims seek coverage to remedy the damage to the otherwise nondefective structure and walls of the Frenches' home; and (3) remand for further proceedings consistent with this opinion.

B.

Because the district court did not address the Insurance Defendants' three alternative arguments and each appears to involve at least one underlying factual dispute, we adhere to the general rule that a federal appellate court does not consider an issue not passed upon below. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). On remand, the district court is free to consider the three alternative arguments raised by the Insurance Defendants both below and in the present appeal, which arguments the district court did not previously pass upon.

If none of the Insurance Defendants' alternative arguments defeat coverage to remedy the damage to the otherwise nondefective structure and walls of the Frenches' home, the district court should conduct proceedings to apportion any damages due the Frenches between the costs to correct the defective EIFS exterior and the costs to rem-

edy the damage to the otherwise nondefective structure and walls of the Frenches' home. Following such apportionment, the district court should enter an appropriate judgment in favor of the Frenches with respect to their declaratory judgment claim and their claim for breach of the duty to indemnify for an amount equal to the amount apportioned for remedying the damage to the otherwise nondefective structure and walls of the Frenches' home.

## III.

For the reasons stated, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*