NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0041n.06

**No. 12-5037**

FILED
*Jan 07, 2013*
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DUSTY MCBRIDE and MCBRIDE
CONSTRUCTION LLC,

      **Plaintiffs-Appellants,**

v.

ACUITY,

      **Defendant-Appellee.**

        /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF KENTUCKY

**BEFORE:**     **KEITH, CLAY, and ROGERS, Circuit Judges**.

     **CLAY, Circuit Judge.** Plaintiffs McBride and McBride Construction ("McBride") were sued for damages by homeowners alleging structural defects in their house, caused by the work of one of Plaintiff's sub-contractors. Plaintiffs then sued their insurance carrier, Defendant Acuity, seeking a declaratory judgment over the extent of insurance coverage and Defendant's duty to defend under their insurance policy. Defendant removed the case to federal court pursuant to 28 U.S.C. § 1441, and moved the district court for summary judgment. The district court granted Defendant's motion for summary judgment, and found that under Kentucky state law, there was no coverage under this form of insurance. Plaintiff now appeals. For the reasons that follow, this Court **AFFIRMS** the judgment of the district court.

**BACKGROUND**

In November 2009, Gary and Holly Holder ("Holders") sued McBride for damages in Kentucky state court, alleging construction defects in their house in Paducah, Kentucky. According to a structural engineer, the house had a differential settlement, where the foundation of the house moved, causing cracks in the walls and floors of the house. The property damage alleged was purportedly caused by the work of McBride's subcontractor, Jimmy Smith Concrete. McBride had a Commercial General Liability ("CGL") policy with Acuity during the period when these damages occurred. McBride requested a defense under his CGL, but Acuity refused, and further refused to indemnify McBride for any damages owed to the Holders.

In September 2010, McBride sued Acuity in Kentucky state court, seeking a declaratory judgment regarding the extent of coverage in the CGL, as well as to define Acuity's duty to defend McBride. Acuity then removed the case to federal court. McBride is a citizen of Kentucky, while Acuity is a citizen of Wisconsin, and the amount in controversy exceeds $75,000.00. Accordingly, jurisdiction is proper under 28 U.S.C. §§ 1332 and 1441. Acuity moved for summary judgment, arguing that faulty construction is not an "occurrence" within the meaning of the CGL, and that therefore as a matter of law, they had no duty to provide a defense to McBride. The district court agreed, and granted the motion for summary judgment.

**DISCUSSION**

A district court's grant of summary judgment is reviewed *de novo*. *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (citing *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003)); *Baggs v. Eagle-Picher Indus.*, 957 F.2d 268, 271 (6th Cir. 1991). Summary judgment is

appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although this Court takes jurisdiction of this case through diversity of citizenship, 28 U.S.C. § 1332, and the applicable substantive law is therefore the state law of Kentucky, *see Erie R.R. v. Tompkins*, 304 U.S. 64, 79 (1938), a federal court sitting in diversity uses the federal standard for summary judgment. *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 550 F.3d 570, *cert. denied, ---* U.S. ---, 130 S. Ct. 110 (2009); *accord Beat ex rel. Putnam v. Walgreen Co.*, 408 F. App'x 898, 901 n.2 (6th Cir. 2010) (quoting *Gafford*). Therefore, we view all evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in their favor. *Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986); *Hoover v. Walsh*, 682 F.3d 481, 492 (6th Cir. 2012) (citing *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)); *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011) ("In reviewing the district court's decision, we view all facts in a light most favorable to the non-moving party and draw inferences in favor of the non-movant.").

However, "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotation marks omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its

case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex v. Catrett*, 477 U.S. 317, 325 (1986)).

For the purposes of this appeal, there is no genuine dispute as to a material fact. Both Plaintiffs and Defendants agree that Plaintiffs constructed a house, which, due to the faulty workmanship of Plaintiffs' sub-contractor, was damaged; and they further agree that Defendant insured Plaintiffs under a CGL. Additionally, both McBride and Acuity agree on the basic legal framework for deciding this case: Kentucky law provides that faulty workmanship does not ordinarily constitute an "occurrence" within the meaning of the CGL. McBride claims that despite this, because the faulty workmanship was performed by a sub-contractor, there is an exception to the general rule, which has been adopted in several states and would be adopted by Kentucky's highest court were it to rule on the issue. Acuity argues that the district court was correct when it held that Kentucky law does not recognize the sub-contractor exception, and was therefore correct in granting summary judgment.

## A.     The Fortuity Doctrine

The insurance policy held by McBride was a standard form, issued by the Insurance Services Office, Inc., which is the standard industry practice for CGLs. The policy included a provision stating that Acuity had no duty to defend McBride in "any suit seeking damages . . . to which this insurance does not apply . . . ." The policy further specified that coverage was limited to "occurrences," and defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The district court first outlined the basic methodology used by Kentucky courts for interpreting insurance contracts, finding that insurance polices are "construed liberally in favor of the insured . . . ." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994), but are interpreted according to their ordinary meaning where there is no ambiguity. *James Graham Brown Found. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991). The district court further held that under Kentucky law, insurers have a broader duty to defend than they do to indemnify. *Id.* at 279. Therefore, if McBride's policy provided coverage for the Holders' claims, then Acuity had a duty to defend McBride in that proceeding, but if McBride's policy did not cover these claims, then there was no duty for Acuity to defend McBride against the Holders.

The Kentucky Supreme Court recently addressed the question of whether damage due to faulty workmanship constitutes an occurrence under an identical CGL policy. In *Cincinnati Ins. v. Motorists Mut. Ins.*, 306 S.W.3d 69 (Ky. 2010), the court found that the CGL provision did not cover damages due to faulty workmanship, as they were not "occurrences." *Id.* at 75. In that case, homeowners sued their construction company, alleging that there had been damage as a result of faulty construction. After the underlying claim was settled, the construction company's first insurance company, Motorist Mutual Insurance, which had provided a defense against the homeowners, was assigned all rights against Cincinnati Insurance, which was Motorist's successor in providing CGL coverage.

The Kentucky Supreme Court held that an "occurrence" was defined in Section V of the CGL policy as "an accident," a term that was not defined in the policy. *Id.* at 72–73. Accordingly, they found that since "accident" was not ambiguous, it should be interpreted according to its plain

meaning. *Id.* at 73–74. The court further reasoned that "[i]nherent in the plain meaning of 'accident' is the doctrine of fortuity." *Id.* at 74. The court explained that the concept of fortuity consists of two aspects: intent and control. *Id.* A loss is fortuitous if it is not intended. *Id.* While acknowledging that one might find faulty workmanship "fortuitous," because it was unlikely that a contractor would intend to perform shoddy or sub-standard work, the court nevertheless found that the better inquiry was into whether the very act of building the house itself was a chance event. *Id.* at 76. In other words, because the builder "had control over the construction of the [] home, either directly or through the subcontractors it chose," *id.*, any faults in the construction of the home were caused by the builder, rather than by a "fortuitous, truly accidental, event." *Id.* And if faulty workmanship is not an "accident," then by definition it cannot be an "occurrence" within the meaning of the CGL, and the policy did not cover any damage unless it was the result of an "occurrence." If this rule applies to the instant case, as the district court found, then Acuity had no duty to defend McBride, because the CGL did not cover the damages as a result of faulty workmanship.

**B.     The Sub-Contractor Exception**

Plaintiffs effectively concede that if *Cincinnati Insurance* controls the instant case, then there was no coverage. But Plaintiffs argue that there is a sub-contractor exception to the general fortuity doctrine, and that the district court erred in failing to apply it. Though they concede that this exception is not established Kentucky law, they argue that *Cincinnati Insurance* cannot be extended to the instant case, and that were the Kentucky courts to examine the facts as presented, then they would apply the exception. This exception, which exists in several jurisdictions, states that the insured is covered for damages caused by faulty workmanship when that workmanship is performed

by a sub-contractor. *See, e.g.*, *French v. Assurance Co. of Am.*, 448 F.3d 693 (4th Cir. 2006) (applying Maryland law); *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 104 P.3d 997 (Kan. Ct. App. 2005). The argument is based in part on the 1986 revisions to the standard-form CGL policies, which Plaintiff claims were added specifically to create a sub-contractor exception to the fortuity doctrine. This argument is not without merit; for example, the Tenth Circuit's decision in *Greystone Construction, Inc. v. National Fire & Marine Insurance Co.*, 661 F.3d 1272, 1288 (10th Cir. 2011), summarizes the history of and policy reasons for the revisions, and states that: "[a]ccordingly, the language included in the 1986 revision to CGL insurance policies covered *some* construction-defect claims arising from the work of subcontractors." (emphasis added).

First, we note that there are two versions of the sub-contractor exception. One of the versions states simply that the faulty workmanship of a sub-contractor is covered as an occurrence under this particular CGL provision. *See, e.g.*, *French*, 448 F.3d at 703–04. The other version of the sub-contractor exception states that the faulty workmanship of a sub-contractor is covered as an occurrence only insofar as it causes damage to other properties, rather than the building constructed by the policy holder. *See, e.g., Travelers Indem. Co. of Am. v. Miller Bldg. Corp.*, 142 F. App'x 147, 149–50 (4th Cir. 2005)

Plaintiffs argue for the former reading of the sub-contractor exception, stating that the exclusion from coverage of property damage created by faulty workmanship is limited by the policy language: "[t]his exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Some courts have agreed with Plaintiffs' interpretation of this provision. *See, e.g., Greystone Const.*, 661 F.3d at 1287 (10th Cir. 2011)

7

("faulty workmanship, standing alone, is not caused by an accident—but that damage to other property caused by the faulty workmanship (including both the nondefective work product of the contractor and third-party property) is the result of an accident."); *French v. Assurance Co. of America*, 448 F.3d 693, 705–06 (4th Cir. 2006). But that is not the only possible construction of the rule; other courts have held that the subcontractor exception does not provide coverage for damage to the insured's work. *See, e.g., Miller Bldg. Corp.*, 142 F. App'x at 149–50 (4th Cir. 2005). *But see Stanley Martin Cos. v. Ohio Cas. Grp.*, 313 F. App'x 609, 614–15 (4th Cir. 2009) (Shedd, J., dissenting in part) (stating that Virginia law was unclear and that recommending that the court certify the question to the Supreme Court of Virginia). More importantly, it does not appear to be the view that the Kentucky courts would be inclined to adopt.

In *Cincinnati Insurance*, the Kentucky court stated that it did not need to address the sub-contractor exception, *see Cincinnati Ins.*, 306 S.W.3d at 80 n.45, but stated that "as we construe it, application of the [sub-contractor] rule could lead to coverage if, for example, the [] allegedly improperly constructed home damaged another's property." *Id.* (citing 9A *Couch on Insurance* § 129:4 (3d ed. 2012)) (emphasis added). Therefore, the best evidence as to what rule the Kentucky courts would adopt strongly suggests that it would only adopt the version that permits coverage when someone else's property, rather than the insured's non-faulty workmanship, is damaged by the work of the sub-contractor.[1] And within the *Cincinnati Insurance* decision, where the Supreme Court of

---

[1]In addition, we note that the district courts of this circuit have found that damages resulting from a house "settling" due to faulty work by a subcontractor are not covered by the terms of this particular CGL. *See, e.g., Acuity v. Krumpelman Builders, Inc.*, No. 09-09-DLB, 2010 WL 1434269, at *4 (E.D. Ky. Apr. 8, 2010); *State Auto Ins. Co. v. Thomas Landscaping & Const., Inc.*, No. 2:09-cv-735, 2011 WL 3475376, at *11–12 (S.D. Ohio Aug. 9, 2011), *rev'd and remanded on other*

Kentucky specifically mentions sub-contractors, the text of that decision supports the proposition that there is no sub-contractor exception in Kentucky law. *See Cincinnati Ins.*, 306 S.W.3d at 76 ("Clearly, [the construction company] had control over the construction of the [] home, either directly or through subcontractors it chose.") (emphasis added).

## CONCLUSION

The judgment of the district court is **AFFIRMED**.

---

*grounds*, No. 11-3921, --- F. App'x---, 2012 WL 3326310 (6th Cir. Aug. 15, 2012).

ROGERS, J., concurring.


I concur. The existence of a sub-contractor exception to a coverage exclusion does not necessarily imply a sub-contractor exception to Kentucky's definition of "occurrence." Courts of other states have varying views, and there is not enough to predict with confidence that the Supreme Court of Kentucky would adopt such an exception.