**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-2102**

STANLEY MARTIN COMPANIES, INCORPORATED,

Plaintiff - Appellant,

v.

OHIO CASUALTY GROUP,

Defendant – Appellee.

------------------------------

NATIONAL ASSOCIATION OF HOME BUILDERS,

Amicus Supporting Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Senior District Judge. (1:06-cv-01035-JCC)

Argued: December 2, 2008            Decided: February 12, 2009

Before KING, SHEDD, and DUNCAN, Circuit Judges.

Reversed and remanded by unpublished per curiam opinion. Judge Shedd wrote a separate opinion concurring in part and dissenting in part.

**ARGUED**: David T. Dekker, HOWREY, L.L.P., Washington, D.C., for Appellant. Elizabeth S. Skilling, HARMAN, CLAYTOR, CORRIGAN & WELLMAN, Richmond, Virginia, for Appellee. **ON BRIEF:** Jeffrey R. Gans, Stephen D. Palley, THELEN REID BROWN RAYSMAN & STEINER,

L.L.P., Washington, D.C., for Appellant.  Thomas S. Garrett, HARMAN, CLAYTOR, CORRIGAN & WELLMAN, Richmond, Virginia, for Appellee.   David S. Jaffe, NATIONAL ASSOCIATION OF HOME BUILDERS, Washington, D.C., for Amicus Supporting Appellant.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal raises the issue of whether damage that a subcontractor's defective work causes to a general contractor's otherwise nondefective work constitutes an "occurrence" under the general contractor's commercial general liability ("CGL") insurance policy. Stanley Martin Companies ("Stanley Martin") sued its insurer, Ohio Casualty Co. ("Ohio Casualty"), seeking a declaratory judgment that Ohio Casualty had breached its duty to indemnify Stanley Martin for costs Stanley Martin incurred to remediate mold damage caused by a subcontractor's defective work. The district court granted summary judgment in favor of Ohio Casualty, finding that damage caused by a subcontractor's defective work does not constitute an "occurrence" triggering coverage under the Ohio Casualty policy. Stanley Martin now appeals. For the reasons that follow, we reverse the district court.

## I.

Stanley Martin is a residential builder. During 1999 and 2000, Stanley Martin was the general contractor for the construction of 24 duplex townhouses in a development in Gaithersberg, MD. Shoffner Industries ("Shoffner"), a subcontractor, supplied wood trusses for the townhouses.

3

Shoffner warranted to Stanley Martin that the trusses were free of mold and agreed to indemnify Stanley Martin for any liability, damages, or costs that arose from negligence or default under the subcontract. Homeowners subsequently reported mold growth in the townhouses, and an investigation revealed that the mold had originated from Shoffner's defective trusses and the surrounding gypsum firewalls. The mold problems in the townhouses eventually led to protracted litigation, and Stanley Martin incurred over $1.7 million in remediation efforts.

The parties' dispute in this case arises out of an umbrella insurance policy that Ohio Casualty issued to Stanley Martin with an effective period of April 1, 2000 to April 1, 2001. The policy stated as follows:

> We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere.

J.A. 431. The policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 432. Section IV.1.b.2 of the policy (the "'your work' exclusion") excluded from coverage the following:

4

[A]ny property damage . . . to "your work" arising out of it or any part of it included in the "products – completed operations hazard"; (but this Subparagraph (2) does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor) . . . .

J.A. 448. The policy provided excess insurance coverage to supplement coverage from Stanley Martin's primary insurance policy, issued by One Beacon Insurance ("One Beacon"), for the same effective period.

At issue in this case is whether Ohio Casualty breached its duty to indemnify Stanley Martin when it refused to contribute to the remediation costs Stanley Martin incurred to address the mold problems in the townhomes. The district court granted summary judgment in favor of Ohio Casualty, finding that damage caused by a subcontractor's defective workmanship does not constitute a covered "occurrence." In reaching this conclusion, the district court cited several Virginia lower court cases and federal cases interpreting Virginia law to support the proposition that "damage caused by the defective workmanship of the insured or the insured's subcontractor and limited to the insured's work does not constitute an 'occurrence' triggering coverage." J.A. 1660. Based on this case law, the district court found:

> As general contractor, [Stanley Martin] was
> responsible for fulfilling the terms of its contracts,
> and Shoffner's faulty workmanship falls on [Stanley
> Martin's] shoulders. . . . Because [Stanley Martin's]
> remediation costs arose out of damage to [Stanley
> Martin's] own 'work' caused by the faulty workmanship
> of its subcontractor, the property damage was not
> 'unexpected' or an 'accident.' Therefore, this Court
> will find that under Virginia law there was no
> 'occurrence' and the Ohio Casualty policy was not
> triggered.

J.A. 1662–63. The district court did find that Virginia law defines "occurrence" to provide coverage for "faulty workmanship that results in bodily injury or property damage to property other than the insured's work." J.A. 1663–64. However, the court found that Stanley Martin failed to show any evidence of such third-party damage beyond the costs it incurred to repair the defective trusses and gypsum firewalls.

Stanley Martin now appeals.

## II.

We have jurisdiction over this case under 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo. Jennings v. Univ. of N.C. at Chapel Hill, 482 F.3d 686, 694 (4th Cir. 2007) (en banc) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 283 (4th Cir. 2004) (en banc)).

6

The primary issue raised on appeal is whether under Virginia law the Ohio Casualty policy, which contains language identical to most CGL policies, covers costs that Stanley Martin incurred to repair damage caused to its own work by Shoffner's faulty workmanship. Because the CGL policy covers only "occurrences," at oral argument the parties focused on whether the spread of mold from the defective trusses to nondefective surrounding components constituted "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Two recent cases from this circuit diverge on the issue of what constitutes a triggering occurrence and frame our analysis.

In Travelers Indemnity Co. of America v. Miller Building Corp., 142 F. App'x 147 (4th Cir. 2005) (unpublished), a general contractor was responsible for completing site development work on two properties and then constructing a building on one of the properties. The general contractor hired a subcontractor to perform part of the site development work. The subcontractor allegedly selected and used defective fill material for the foundation, which eventually expanded and damaged the building that the general contractor had constructed. The general contractor sought a declaratory judgment that its insurance

7

company had a duty to indemnify it for the damage to the building. Applying Virginia law, the Miller court noted that "damages resulting from the insured's defective performance of a contract and limited to the insured's work or product [are] not covered" by a CGL policy because such damages are "'expected' from the standpoint of the insured." 142 F. App'x at 149 (quoting Hotel Roanoke Conference Ctr. Comm'n v. Cincinnati Ins. Co., 303 F. Supp. 2d 784, 786 (W.D. Va. 2004)). The Miller court held that the damage to the general contractor's building "allegedly was a result of [the insured's] subcontractor's defective performance" and "[a]s a result . . . is not considered to be 'unexpected,' or caused by an 'occurrence.'" 142 F. App'x at 149. Because the damage to the general contractor's work did not constitute an occurrence, it did not trigger the insurer's duty to indemnify.

In contrast, the court in French v. Assurance Co. of America, 448 F.3d 693 (4th Cir. 2006), distinguished between the subcontractor's defective work itself and the damage that the defective work caused to surrounding nondefective components. In French, the general contractor was responsible for building a residential home and hired a subcontractor to clad the exterior of the home with a synthetic stucco system known as Exterior Insulating Finishing System ("EIFS"). Defects in the EIFS

8

exterior allowed moisture intrusion that caused extensive moisture and water damage to the home's structure and walls. Applying Maryland law, the French court found that by itself, the subcontractor's defective work did not constitute an accident or occurrence under the policy because an insured's obligation to repair the defective work "is not unexpected or unforeseen under the terms of the [general] contract." Id. at 703 (citation and quotations omitted). On the other hand, the French court found that damage caused to surrounding nondefective components did constitute "an accident, and therefore, an 'occurrence' under the initial grant of coverage of the [CGL policy]" because "[a]s delivered per the construction contract," those components were "defect-free," such that their subsequent damage was unexpected. Id. at 704-05.

As noted, the unpublished Miller opinion relied on Virginia law, while the published French opinion relied on Maryland law. The parties in this case do not dispute that Virginia law applies to the Ohio Casualty policy and that the Virginia Supreme Court has not addressed the issue of whether damage that a subcontractor's defective work causes to the insured's nondefective work constitutes an occurrence. The parties likewise agree that French involved a CGL policy with

9

substantially the same language as the Ohio Casualty CGL policy in this case, and that Virginia insurance law is not materially different from Maryland insurance law.

Having considered the parties' arguments, we find Miller to be inapposite and, in any event, not binding on this court. Miller predates French, and its holding ultimately rests on case law that addressed damage that a general contractor's defective work caused to its own finished product, not damage that a subcontractor's defective work caused to the general contractor's nondefective work.[1] By contrast, the analysis in French is grounded in the plain language of the policy and the interplay between the policy's broad definition of an

---

[1]See, e.g., Am. Fire & Cas. Ins. Co. v. Doverspike, 1995 WL 1055839, at *1 (Va. Cir. Ct. Apr. 25, 1995) (insured builder sought coverage for damages arising out of its breach of construction contract due to substandard, late, or nonexistent work); Boiler Brick & Refractory Co., Inc. v. Md. Cas. Co., 168 S.E.2d 100 (Va. 1969) (subcontractor sued insurer to recover repair and replacement costs for its own work under its own policy). Aside from Miller, only one Virginia lower court case that the parties cite holds that a general contractor is responsible for its subcontractor's defective workmanship, such that any defective work, as well as any damage it may cause to nondefective components, is foreseeable and therefore not an occurrence. See RML Corp. v. Assurance Co. of Am., No. CH02-127 (Va. Cir. Ct. Dec. 31, 2002), reprinted in 17 Mealey's Litigation Report #11, at 7. The language of the policy at issue supported this conclusion because the policy's exclusions "specifically exclude[] any property damage to real property that arises out of operations by a subcontractor on behalf of [the general contractor]." Id. at 9–10. The Ohio policy, in contrast, contains no such exclusion.

"occurrence" and the policy's "your work" exclusion.[2]  See French, 448 F.3d at 703 (noting that the subcontractor's defective work caused "property damage to otherwise nondefective parts of the building" -- a distinction "which brings into play the subcontractor exception to the 'Your Work' exclusion" in the CGL policy).

At oral argument, Ohio Casualty attempted to distinguish French on the ground that the moisture intrusion that damaged the home's nondefective structure in that case was a separate event that could constitute an occurrence.  In contrast, Ohio Casualty emphasizes that in this case the defective trusses, the source of the ensuing damage, were already present in the

---

[2]The "your work" exclusion excludes coverage for damage that the insured might cause to its own work, but exempts from that exclusion any damage that an insured's subcontractor might cause to the insured's work.  The Miller court rejected the argument that exclusions "create" coverage.  142 F. App'x at 149. Although this is a valid point, it misses the mark slightly. The import of the "your work" exclusion and its subcontractor exception is not that the exclusion "creates" coverage.  Rather, the import is that the exception lends insight into the baseline definition of "occurrence" from which parties and courts interpreting CGL policies should operate.  If the definition of "occurrence" cannot be understood to include an insured's faulty workmanship, an exclusion that exempts from coverage any damage the insured's faulty workmanship causes to its own work is nugatory.  If, on the other hand, the definition of "occurrence" does include an insured's faulty workmanship, such an exclusion functions as a meaningful "limitation or restriction on the insuring clause."  Nationwide Mut. Ins Co. v. Wenger, 278 S.E.2d 874, 876 (Va. 1981) (quoting Haugan v. Home Indem. Co., 197 N.W.2d 18, 22 (S.D. 1972)).

11

townhouses when they were completed.  Ohio Casualty argues that the subsequent spread of mold in the townhouses represented only a further deterioration of already defective work, rather than a new, unexpected event that would trigger coverage.  This labored distinction places more weight on the policy language than it can bear.  The policy's definition of occurrence is broad and inclusive, providing coverage for any "accident" -- that is, any "event that takes place without one's foresight or expectation." Wooden v. John Hancock Mut. Life Ins. Co., 139 S.E.2d 801, 804 (Va. 1965) (citation omitted).  As in French, there is no allegation here that Stanley Martin "either expected or intended that its subcontractor" would perform defective work, or that the spread of mold beyond the defective trusses was expected or intended.  448 F.3d at 704.  At oral argument, Ohio Casualty was unable to point to language in the policy that would exclude from coverage the unintended, unexpected spread of mold from the defective trusses to surrounding nondefective components, nor could we find any.

Under the analytical framework established by French, Stanley Martin's obligation to repair or replace the defective trusses was not unexpected or unforeseen under the terms of its building contracts for the townhouses and does not trigger a duty to indemnify.  However, any mold damage that spread beyond

12

the defective trusses and the gypsum fire walls to nondefective components of the townhouses was an unintended accident, or an occurrence that triggered coverage under the Ohio Casualty policy.[3]

The parties dispute whether Stanley Martin has shown damages beyond the costs incurred to repair or replace the defective trusses.  The district court did not reach this issue because it found that the spread of mold did not constitute a triggering occurrence.  Instead, the district court considered only whether Stanley Martin had shown "damage to third-party property other than the insured's work that triggered coverage under the Ohio Casualty policy."  J.A. 1664.  Because a fact issue exists as to whether Stanley Martin has shown that it incurred costs to remediate mold damage beyond replacing or

---

[3]Although the dissent points out that the Miller court, applying Virginia law, found that "damages resulting from the insured's defective performance of a contract and limited to the insured's work or product [are] not covered" by a CGL policy, the Miller court did not base such a determination on an analysis of the "your work" exception.  142 F. App'x at 149 (quoting Hotel Roanoke Conference Ctr. Comm'n v. Cincinnati Ins. Co., 303 F. Supp. 2d 784, 786 (W.D. Va. 2004)).  Rather, the Miller court found that damage caused by a "subcontractor's defective performance . . . is not considered to be . . . caused by an 'occurrence.'"  Id.  Having found an occurrence, with which the dissent does not appear to disagree, our published opinion in French would appear to govern the district court's interpretation of virtually identical, standard contract language.

13

repairing the defective trusses and gypsum fire walls, we remand to the district court for further inquiry into this issue.

## IV.

Because we find that damage a subcontractor's defective work causes to an insured's nondefective work constitutes an occurrence under the Ohio Casualty policy, we reverse the district court and remand the matter for proceedings consistent with this opinion.

<u>REVERSED AND REMANDED</u>

SHEDD, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court erred in not finding an occurrence in this instance based on the definition of "accident." Nevertheless, I would not reach the question of whether there is coverage in this case in the first instance. The Supreme Court of Virginia has never determined whether there is coverage for damage that a subcontractor's defective work causes to a general contractor's otherwise nondefective work under the general contractor's commercial general liability insurance policy. Unlike the majority, I would not adopt French v. Assurance Company of America, 448 F.3d 693 (4th Cir. 2006). French is based on Maryland law, and in French, we were expressly persuaded by the Maryland state law case of Lerner Corp. v. Assurance Co. of Am., 707 A.2d 906 (Md.App. 1998). See French, 448 F.23d at 705. Here, however, we are deciding Virginia law. Compare French with Travelers Indemnity Co. of America v. Miller Building Corp., 142 Fed.Appx. 147, 149 (4th Cir. 2005) (applying Virginia law, we noted that "damages resulting from the insured's defective performance of a contract and limited to the insured's work or product [are] not covered" by a CGL policy).

This is a difficult and important area of the law. Thus, I would certify this issue to the Supreme Court of Virginia to

15

determine whether there is coverage in light of the "your work" exclusion and subcontractor exception. Therefore, I respectfully concur in part and dissent in part from the judgment of the majority.