**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0693n.06

No. 09-5899

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 10, 2010**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| MABLE B. BEAL et al., | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| WALGREEN COMPANY, | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | **O P I N I O N** |
| _____ | ) | |

**Before:  BATCHELDER, Chief Circuit Judge; MOORE and COLE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  In this diversity case, Mable B. Beal, deceased (through representative Deborah K. Putnam), and Ruth M. Schaeffer, deceased[1] (through representative Doris Bicknell), (collectively, the "Plaintiffs") challenge the district court's partial grant of summary judgment for the Plaintiffs and for the defendant, Walgreen Company ("Walgreens").  This case arises from state-law causes of action for medical malpractice that the Plaintiffs filed separately in Tennessee state court in 2002 against Walgreens for improperly filled prescriptions.  Plaintiff Beal, then seventy-five years of age, presented a handwritten prescription from her urologist for Imipramine to a Walgreens pharmacist in 2001, but the pharmacist erroneously read the drug name as Imuran and dispensed Imuran to Beal.  Beal did not receive counseling at the time she picked up her prescription, and she took the entire prescribed dose and part of one refill

---

[1]The Plaintiffs' deaths are not at issue in their causes of action.

before she went to the emergency room complaining of symptoms of swelling in her legs, feet, and abdomen; weight gain; and shortness of breath. The emergency-room doctor recognized that Imuran was not a drug prescribed for bladder problems, and Beal stopped taking Imuran. Beal alleges that her health improved after she stopped taking Imuran and began taking Imipramine, but that, prior to her death in 2003, she never fully recovered from the congestive-heart-failure complications that Imuran caused. Plaintiff Schaeffer, then ninety-three years of age, presented a prescription for a manufacturer-created Uro-Pac dosage of Floxin to a different Walgreens pharmacist in 2001, but because the Uro-Pac was unavailable at that location, the pharmacist offered to create a simulated dose pack. Schaeffer's son-in-law, who presented the prescription, accepted this option, but the pharmacist miscalculated the number of pills required and created a dose pack with dosage directives greater than prescribed. Schaeffer took the dose pack until another son-in-law recognized that she was taking too large of a dosage after she complained of nausea and vomiting. Schaeffer alleges that she never fully recovered prior to her death in 2002.

The Plaintiffs' separate state-court causes of action against Walgreens were later consolidated. Following several procedural setbacks, the Plaintiffs each non-suited their state cases in November 2004 and then filed one case together in federal court in March 2005 asserting several causes of action related to the same underlying conduct alleged in their separate state-court cases. The district court granted Walgreens' motion requesting that it decline to exercise jurisdiction in light of Plaintiff Beal's then-pending state-court appeal, and the district court dismissed the case without prejudice to the Plaintiffs refiling in state court. The Plaintiffs refiled their claims in state court in August 2006, but the court dismissed their complaints in February 2007 as barred by the state statute of limitations. The Plaintiffs immediately filed a Federal Rule of Civil Procedure 60

2

motion in the district court to set aside the dismissal order, and the district court "restored [the case] to the docket for further administration" in July 2007 before later vacating its dismissal order. Dist. Ct. Doc. ("Doc.") 60; Doc. 73. The Sixth Circuit declined to accept Walgreens' interlocutory appeal from this order, and the case continued in the district court.

The Plaintiffs then filed an amended complaint and a motion for summary judgment on compensatory and punitive damages, the disposition of which is at issue in this appeal. In response, Walgreens moved under state law to strike the affidavit of the Plaintiffs' expert, clinical pharmacist Dr. Bob Lobo, and under Federal Rule of Civil Procedure 56 to strike the affidavits from four deceased affiants. Walgreens also filed a cross-motion for summary judgment on punitive damages. In one order, the district court granted Walgreens' motions to strike the affidavits and ruled on the dueling summary-judgment motions. The court denied summary judgment to Plaintiff Beal on all of her claims because it concluded that Plaintiff Beal could not prove the causation element of her medical-malpractice case. But the court concluded that Plaintiff Schaeffer's treating physician had adequately opined as to causation and granted summary judgment to Plaintiff Schaeffer on compensatory damages in an amount to be determined at trial. Even so, the court ruled that neither Plaintiff was entitled to punitive damages under Tennessee law and granted summary judgment to Walgreens on both Plaintiffs' punitive-damages claims. The district court then entered a Federal Rule of Civil Procedure 54(b) final judgment so that the Plaintiffs could pursue this appeal, stressing the fact that the Plaintiffs explained in their unopposed Rule 54(b) motion that they will dismiss all claims with prejudice if this court affirms the district court's punitive-damages ruling.

The Plaintiffs assert on appeal the eight issues that they proposed in their Rule 54(b) motion, but, as stated in their motion, their main contention is that the district court incorrectly interpreted

3

Tennessee law on punitive damages in holding that neither Plaintiff was entitled to recover such damages as a matter of law. Because we affirm the district court's punitive-damages ruling upon which the Plaintiffs have hinged the continuing viability of the instant case, we decline to reach the other, non-dispositive issues that the Plaintiffs raised.

## ANALYSIS

We review a district court's summary-judgment decision de novo, applying the substantive law of the forum state and federal procedural law in diversity cases.[2] *Biegas v. Quickway Carriers,*

[2]Five days before the scheduled oral argument in this case, the Plaintiffs filed "Appellants' Motion Summarily to Vacate Summary Judgment for District Court's Lack of Subject Matter Jurisdiction to Enter Same," seemingly arguing that a federal court sitting in diversity is precluded from utilizing federal-court decisions interpreting the applicable federal procedural rules if there is a state-court decision interpreting the identical state procedural rule and contending that the district court lacked subject-matter jurisdiction to decide the instant summary-judgment motion under anything other than state law. Walgreens is correct that the Plaintiffs failed to raise this argument below or in their Rule 54(b) motion, but both parties have now addressed this issue in filings to this court, and "we are under an independent obligation to police our own jurisdiction." *Bonner v. Perry*, 564 F.3d 424, 426 (6th Cir. 2009) (internal quotation marks omitted).

We conclude that the Plaintiffs' contention is completely without merit under both the U.S. Supreme Court's and this circuit's precedents. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010) (explaining the choice-of-law analysis in diversity cases and holding that although New York had a conflicting procedural class-action law, Federal Rule of Civil Procedure 23 applied to a diversity action arising under New York law because Rule 23 was on point and valid under the Rules Enabling Act); *Biegas*, 573 F.3d at 374 ("The availability of summary judgment in diversity actions is governed by the federal standard, embodied in Fed. R. Civ. P. 56, rather than by state law." (citing, inter alia, 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2712, at 219 (3d ed. 1998))); *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 573–76 (6th Cir. 2008) (explaining that because "summary judgment is a procedural device," this court has applied Federal Rule 56 in diversity cases even when presented with a state rule that altered the judge-jury demarcations or overrode the state's summary-judgment rule), *cert. denied*, 130 S. Ct. 110 (2009); *see also Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165–66 (6th Cir. 1993) ("readily put[ting] to rest" the argument "that, since Kentucky's procedural rules and case law relating to summary judgment affect substantive legal rights, a federal court sitting in diversity should apply Kentucky's summary judgment standard"), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1190–94 (2010); *Martin v. Wal-Mart Stores, Inc.*, 159 F. App'x 626, 627–28 & n.1 (6th Cir. 2005) (unpublished opinion)

4

*Inc.*, 573 F.3d 365, 373–74 (6th Cir. 2009). Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As we have stated:

> "The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by 'showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted). In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, the facts and any inferences that can be drawn from those facts[ ] must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)."

*Biegas*, 573 F.3d at 374 (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)).

"The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the [non-moving party's] case, such as proof by clear and convincing evidence, must be satisfied by the [non-moving party]." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). "We review cross

---

(rejecting the application of Tennessee's summary-judgment standard in a diversity case). As Justice Stevens explained in his concurring opinion in *Shady Grove Orthopedics Association*,

> If no federal rule applies, a federal court must follow the Rules of Decision Act and make the relatively unguided *Erie* choice to determine whether the state law is the rule of decision. But when a situation is covered by a federal rule, the Rules of Decision Act inquiry by its own terms does not apply. Instead the Rules Enabling Act (Enabling Act) controls.
>
> . . . .
>
> The Enabling Act's limitation does not mean that federal rules cannot displace state policy judgments; it means only that federal rules cannot displace a State's definition of its own rights or remedies.

130 S. Ct. at 1448 (Stevens, J., concurring) (internal quotation marks and citation omitted).

motions for summary judgment under this standard as well, evaluating each motion on its own merits." *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 335 (6th Cir. 2010). This requires a court to "tak[e] care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Profit Pet v. Arthur Dogswell, LLC*, 603 F.3d 308, 312 (6th Cir. 2010) (internal quotation marks omitted); *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004), *cert. denied*, 545 U.S. 1128 (2005).

## A. Evidence Weighing at the Summary-Judgment Stage

The Plaintiffs raise as a threshold issue the assertion that the district court failed to apply the proper evidentiary standard for summary-judgment motions, contending that "the district court could not have granted summary judgment without having impermissibly weigh[ed] evidence." Appellant Br. at 29. We disagree. The Plaintiffs confuse the district court's ability in summary judgment to decide whether the undisputed facts, viewed in the light most favorable to the non-movant, are sufficient to meet a plaintiff's burden of proof on an element of their prima facie case with the district court's inability to weigh the evidence to decide a disputed issue of fact. The Plaintiffs also seem to forget that Walgreens was the cross-movant for punitive damages only, while the Plaintiffs were the movant for both compensatory damages and punitive damages. From our review of the district court's opinion, we conclude that although the district court did not preface each of its conclusions with a statement that it had in fact viewed all of the evidence in the light most favorable to the non-moving party, the district court stated and followed the proper summary-judgment standard.

**B. Tennessee Punitive Damages Law: "Intentionally" and "Recklessly"**

Both parties moved for summary judgment on punitive damages, and the district court granted summary judgment in favor of Walgreens, concluding as a matter of law that neither Plaintiff was entitled to a punitive-damages award. Punitive damages are not available under Tennessee law unless a plaintiff can prove "by clear and convincing evidence that the defendant acted intentionally, fraudulently, maliciously, or recklessly." *Goff v. Elmo Greer & Sons Constr. Co.*, 297 S.W.3d 175, 187 (Tenn. 2009), *cert. denied*, 130 S. Ct. 1910 (2010); *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). The Plaintiffs relied only on the "intentionally" or "recklessly" aspects of punitive damages, and they assert that the district court erred by misinterpreting the meanings of both as defined under Tennessee law. The district court found that the Plaintiffs "failed to offer sufficient evidence that would demonstrate that Defendant's actions were not just the result of ordinary negligence."[3] Doc. 150 (Dist. Ct. Summ. J. Op. at 12–14). The district court specifically rejected the Plaintiffs' interpretation of "intentional"—"that a person can be subject to punitive damages if she intentionally engages in conduct regardless of whether that conduct is meant to be hurtful, benign, or helpful"—because it found that "[s]uch an interpretation would lead to freakish results where almost every act of mere negligence becomes an intentional act subject to punitive damages."

_____

[3]The complaint alleged multiple tort theories, but Walgreens contended, and the district court accepted, that the Tennessee Medical Malpractice Act, Tennessee Code Annotated § 29-26-115, applied. The Plaintiffs do not challenge this characterization on appeal. The Tennessee Medical Malpractice Act "'codifies the common law elements of negligence—duty, breach of duty, causation, proximate cause, and damages. No claim for negligence can succeed in the absence of any one of these elements.'" *Kelley v. Middle Tenn. Emergency Physicians, P.C.*, 133 S.W.3d 587, 592 (Tenn. 2004) (quoting *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993) (citations omitted)). The Plaintiffs included a request for punitive damages in their complaint, which required the additional proof of a required mental state under Tennessee law.

*Id.* at 12–13. And the court found that the acts that the Plaintiffs alleged were "reckless" constituted mere negligence that did not satisfy Tennessee's requirement of egregiousness. *Id.* at 13–14.

As mentioned, Tennessee courts require a clear and convincing showing that a defendant acted intentionally, fraudulently, maliciously, or recklessly in order to warrant punitive damages because punitive damages are "intended to punish a defendant, to deter him from committing acts of a similar nature, and to make a public example of him" and are "appropriate only in the most egregious cases." *Goff*, 297 S.W.3d at 187 (internal quotation marks omitted). "To prevail on a claim for punitive damages [in a negligence case], the plaintiff must show that the defendant's negligence that proximately caused his or her injury reached a substantially higher level than ordinary negligence" and "was so reprehensible that it must be both punished and deterred." *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 206 (Tenn. Ct. App. 2008). Clear and convincing evidence is that which "leaves 'no serious or substantial doubt about the correctness of the conclusions drawn.'" *Goff*, 297 S.W.3d at 187 (quoting *Hodges*, 833 S.W.2d at 901 n.3); *Nelms v. Walgreen Co.*, No. 02A01-9805-CV-00137, 1999 WL 462145, at *3 (Tenn. Ct. App. July 7, 1999) (unpublished opinion) ("In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is highly probable as opposed to merely more probable than not." (internal quotation marks omitted)). "It is the duty of the Trial Court to determine whether there is material evidence which would justify the award of punitive damages but the allowance of such punitive damages is a matter of discretion with the jury." *Odom v. Gray*, 508 S.W.2d 526, 533 (Tenn. 1974); *accord Sanford v. Waugh & Co.*, No. M2007-02528-COA-R3-CV, 2009 WL 1910957, at *18 (Tenn. Ct. App. June 30, 2009). "A submissible punitive damages claim has been made if the evidence and the inferences reasonably drawn from the

8

evidence are sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity that the defendant's conduct that caused the plaintiff's injury was intentional, fraudulent, malicious, or reckless." *Duran*, 271 S.W.3d at 207.

The Plaintiffs first contend that they are entitled to punitive damages because Walgreens' conduct qualified as "intentional." Under Tennessee law, "[a] person acts intentionally when 'it is the person's conscious objective or desire to engage in the conduct or cause the result.'" *Goff*, 297 S.W.3d at 187 n.10 (quoting *Hodges*, 833 S.W.2d at 901). The Plaintiffs contend that the "or" prior to "cause the result" in this definition negates the need to prove any connection between the required mental state and the result, and they argue that Walgreens' intentional action in filling the prescriptions is sufficient to satisfy the "intentional" standard for punitive damages. The Plaintiffs assert that Walgreens acted "intentionally" because it was Walgreens' "conscious objective or desire to engage in the conduct" of filling the prescriptions, and Walgreens knew[4] that improperly filled prescriptions could be harmful even though it had no intent to mis-fill the prescriptions or to cause any resulting injury to the Plaintiffs. Instead, the Plaintiffs assert that Walgreens' "negligent conduct is reprehensible enough to demand an award of punitive damages." Doc. 129-1 (Pl. Summ. J. Mem. at 21).

We cannot accept the Plaintiffs' characterization of Walgreens' conduct in this case, and, tellingly, the Plaintiffs cite no caselaw in support of their interpretation of "intentionally." The

---

[4]We decline to decide whether the district court considered the proper corporate-personhood theory. Even accepting the Plaintiffs' explanation of Walgreens' relevant conduct, for the reasons stated below we conclude that the district court's grant of summary judgment to Walgreens on punitive damages was not in error.

Plaintiffs direct us to consider the Tennessee Code Annotated § 39-11-302(a)[5] criminal-law definition cited in *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992), but this does not support the Plaintiffs' interpretation. In fact, our research revealed that the Tennessee courts have explained that when a specific mens rea is an element of a crime, the mens rea must be proved in addition to establishing the voluntariness of the action—in other words, to prove that an act was done "intentionally" requires proof that the actor engaged in the conduct while aware of "the nature of the conduct" or desiring to "cause the result" of the conduct. *See State v. Ducker*, 27 S.W.3d 889, 896–97 (Tenn. 2000) (explaining the distinction between nature-of-conduct and result-of-conduct criminal mental states under Tennessee law), *cert. denied*, 531 U.S. 1197 (2001); *State v. Wilson*, 924 S.W.2d 648, 650–51 (Tenn. 1996); *State v. Crowe*, 914 S.W.2d 933, 938 (Tenn. Crim. App. 1995) (explaining that proof of intent to cause serious injury to the victim is not required if sufficient evidence is presented regarding defendant's intent to engage in conduct of the nature that would cause the harm); *see also State v. Page*, 81 S.W.3d 781, 787 (Tenn. Crim. App. 2002) ("'Intentional' can refer to the nature of defendant's conduct or the result of defendant's conduct."); *State v. Stricklin*, No. M2005-02911-CCA-R3-CD, 2007 WL 1028535, at *17 (Tenn. Crim. App. Apr. 5, 2007) (unpublished opinion) (same); *State v. Womack*, No. E2003-02332-CCA-R3-CD, 2005 WL 17428, at *8 (Tenn. Crim. App. Jan. 4, 2005) (unpublished opinion) ("In general, . . . 'intentional' corresponds loosely with the common law concept of specific intent, while 'knowingly' corresponds loosely with the concept of general intent."). When a mental state is assessed with regard to the "conduct" element, we must look to "the nature of the proscribed act or the manner in which the

---

[5] "'Intentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." TENN. CODE ANN. § 39-11-302(a).

defendant acts." *Womack*, 2005 WL 17428, at *8. In an unpublished civil case, the Tennessee Court of Appeals rejected the Plaintiffs' precise argument, stating that "the issue is not whether [the defendants] intentionally or consciously [engaged in the conduct], but rather the motive for the [conduct]." *JWT, L.P. v. Printers Press, Inc.*, No. M2001-02590-COA-R3-CV, 2002 WL 31397317, at *9 (Tenn. Ct. App. Oct. 4, 2002) (unpublished opinion) (noting there was no dispute "that it was the conscious objective of [the defendants] to [engage in the conduct]").

Although the Plaintiffs attempt to explain what type of conduct satisfies the intentional standard with vague references to Dr. Lobo's affidavit[6] concerning Walgreens' conscious act of dispensing the drugs while it was cognizant of the general fact that mis-filled prescriptions could cause harm, we conclude that this is not sufficient to meet the clear-and-convincing-evidence standard for the Plaintiffs to withstand Walgreens' summary-judgment motion. The Plaintiffs have not shown a genuine issue of material fact whether Walgreens was aware that it was mis-filling the prescriptions—the nature of the conduct. Therefore, the Plaintiffs have failed to meet their burden in opposing Walgreens' summary-judgment motion on the intentional-conduct prong.

The Plaintiffs next claim that punitive damages should be available because Walgreens' conduct satisfies the "reckless" standard. "A person acts recklessly when the person 'is aware of,

---

[6]The district court granted Walgreens' motion to strike Dr. Lobo's affidavit for failure to meet the causation standard required under the Tennessee Medical Malpractice Act, § 29-26-115(a)(3). Doc. 150 (Dist. Ct. Summ. J. Op. at 7–8). However, the district court did consider Dr. Lobo's affidavit in its punitive-damages analysis. *See id.* at 14. Even assuming that the district court erred in striking Dr. Lobo's affidavit and thus could properly consider the affidavit in its punitive-damages analysis—an issue we decline to decide because it is not dispositive in light of the Plaintiffs' Rule 54(b) stipulation—we conclude that the Plaintiffs are unable to satisfy the standard for entitlement to punitive damages. For similar reasons, we also decline to decide whether the district court properly struck the deceased affiants' affidavits under Rule 56(e).

but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.'" *Goff*, 297 S.W.3d at 187 n.11 (quoting *Hodges*, 833 S.W.2d at 901); *accord Flax v. Daimler Chrysler Corp.*, 272 S.W.3d 521, 531–32, 539 (Tenn. 2008), *cert. denied*, 129 S. Ct. 2433 (2009). "'Reckless' can refer to the circumstances surrounding defendant's conduct or the result of defendant's conduct." *Page*, 81 S.W.3d at 787; *Stricklin*, 2007 WL 1028535, at *17 (same). Walgreens has admitted that its pharmacists violated the applicable standard of care, and the Plaintiffs assert that Dr. Lobo's opinion that the errors were "preventable" pharmacy errors is equivalent to the "gross deviation from the standard of care" required for recklessness. Plaintiff Beal asserts that Walgreens was reckless with regard to her prescription because the pharmacist failed to call the prescribing physician group to confirm the illegible prescriber's signature, in violation of Tennessee law, and therefore improperly dispensed a potentially lethal drug. Plaintiff Schaeffer asserts that Walgreens was reckless with regard to her prescription because the pharmacist's dosage pack and instructions were higher than what her doctor prescribed.

We conclude that the Plaintiffs' allegations do not meet the standard for recklessness required under Tennessee law. "The requirement of recklessness imposes on [the plaintiff] a significantly heavier burden than a simple negligence claim." *Duran*, 271 S.W.3d at 207. The Tennessee Supreme Court has explained that *Hodges*'s definition of "recklessly" requires one to have disregarded a substantial risk such that the person "'g[a]ve no thought to'" or "'pa[id] no attention to'" the known risk. *Doe v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 37 (Tenn. 2005) (quoting WEBSTER'S THIRD INT'L DICTIONARY 655 (1971)). "Although the reckless actor intends to act or not to act, the reckless actor lacks the 'conscious objective or desire' to engage in harmful

12

conduct or to cause a harmful result. . . . [R]ecklessness contains an awareness component similar to intentional conduct which is not demanded of negligence." *Id.* at 38 (citations omitted); *see Collins v. Arnold*, No. M2004-02513-COA-R3-CV, 2007 WL 4146025, at *20 (Tenn. Ct. App. Nov. 20, 2007) (unpublished opinion) (applying *Doe* and *Hodges* to punitive-damages claim). The Tennessee Court of Appeals in an unpublished opinion has, in fact, rejected the argument that improperly dispensing pharmaceuticals is gross negligence giving rise to punitive damages on the basis that it "involved a dangerous or lethal instrumentality," concluding that pharmacists did not have a heightened duty of care beyond that "established by the standard of care required by the pharmacy profession in the same or similar communities." *See Nelms*, 1999 WL 462145, at *5. The Court of Appeals further held that proof of a variation from the applicable Tennessee Board of Pharmacy regulations does not automatically qualify as a gross deviation. *See id.* at *5 (potential violation of regulation for ratio of pharmacists to technicians did not constitute gross deviation). Considering both the "reckless" standard enunciated by the Tennessee courts and the state courts' application of that standard, we agree with the district court that Walgreens' "errors were acts of negligence and do not fall into the category of the most egregious cases to which the Tennessee Supreme Court limits punitive damages." Doc. 150 (Dist. Ct. Summ. J. Op. at 13–14).

For the foregoing reasons, we conclude that the district court did not misinterpret or misapply the requirements for conduct rising to the level of "intentionally" or "recklessly" under Tennessee punitive-damages law, and that the Plaintiffs are not entitled to punitive damages as a matter of law. Therefore, the district court did not err in granting summary judgment to Walgreens on the Plaintiffs' punitive-damages claims.

13

**C. Tennessee Punitive Damages Law: Incorporation of "Potential Harm"**

The Plaintiffs also contend that the district court erred in considering the "actual harm" the Plaintiffs suffered in analyzing the availability of punitive damages, asserting that punitive damages should be assessed with reference to the "potential harm" that the tortfeasor's actions or omissions could have caused. This argument, like many that the Plaintiffs raised on appeal regarding punitive damages, seems aimed at supporting the amount of a punitive-damages award *after* it has been awarded, rather than supporting why a punitive-damages award *should* be available. As stated above, in order to be entitled to an award of punitive damages under Tennessee law, the plaintiff must first prove that punitive damages are justified based on the defendant's state of mind. *See Goff*, 297 S.W.3d at 187; *Odom*, 508 S.W.2d at 533. This analysis does not include the amount of harm. *See Hodges*, 833 S.W.2d at 901 (explaining the bifurcated trial process a court may use if a plaintiff seeks punitive damages). The potential for harm is not considered under Tennessee law until a court is determining the propriety of the *amount* of a punitive-damages award. *See id.*; *Goff*, 297 S.W.3d at 191.

> To assist courts in determining whether a punitive award is grossly excessive and violates due process, the [U.S. Supreme] Court has identified three guideposts: (1) the degree of reprehensibility of the defendant's conduct; (2) the *disparity between the actual or potential harm suffered* by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties authorized or imposed in comparable cases.

*Goff*, 297 S.W.3d at 191 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75 (1996)) (emphasis added). Thus we conclude that the Plaintiffs' argument related to *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443 (1993), is not relevant to the actual issue on appeal—i.e., whether the district court properly denied summary judgment to the Plaintiffs on the threshold issue

14

of the availability of punitive damages and properly granted summary judgment to Walgreens. The Plaintiffs' reliance on *TXO* is not convincing because the U.S. Supreme Court did not analyze whether the plaintiffs were entitled to a punitive-damages award but rather considered whether the *amount* of an award given to a plaintiff who is entitled to a punitive-damages award violated the Constitution. *TXO*, 509 U.S. at 446 ("The question we granted certiorari to decide is whether that punitive damages award violates the Due Process Clause of the Fourteenth Amendment, either because its amount is excessive or because it is the product of an unfair procedure."). We need not decide whether Tennessee law supports the Plaintiffs' argument that in cases where punitive damages are available, the potential, as opposed to actual, harm may be considered in fashioning an award amount because this issue played no role in the district court's decision. The district court was asked to determine whether the Plaintiffs could meet their burden to show that they were entitled to a punitive-damages award. The comparison between actual harm and potential harm for punitive damages is not an issue until a court is determining the propriety of the *amount* of a punitive damages award; this issue would not be relevant to this case until after the amount was determined at trial.

## CONCLUSION

Because the district court did not err in interpreting Tennessee punitive-damages law, and the Plaintiffs' allegations are insufficient to raise a genuine issue of material fact[7] related to their entitlement to punitive damages, we **AFFIRM** the district court's grant of summary judgment to Walgreens on the Plaintiffs' punitive-damages claims. Cognizant of the Plaintiffs' declaration that

---

[7]Indeed, the Plaintiffs repeatedly conceded in their district court filings that no disputed issues of fact existed.

15

"if the [District] Court's order (Dkt. Entry 150) is affirmed on appeal, Plaintiffs have no interest in a trial being conducted" without the availability of punitive-damages awards and "will voluntarily dismiss all claims with prejudice," Doc. 157 (Pl. Unopposed Rule 54(b) Mot. at 5, 6–7), we decline to decide the remaining issues raised in the Plaintiffs' appeal. We therefore **REMAND** to the district court for entry of an order dismissing the Plaintiffs' claims with prejudice in accordance with the Plaintiffs' proposed stipulation filed contemporaneously with their unopposed Rule 54(b) motion. *See* Doc. 157-1 (Pl. Unilateral Conditional Stipulation to Dismiss).